UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | Criminal Action |
| **Plaintiff,** | ) | No. 1:20-CR-84 |
| | ) | |
| **v.** | ) | June 11, 2020 |
| | ) | 10:30 a.m. |
| **GARRISON KENNETH COURTNEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

***TRANSCRIPT OF ARRAIGNMENT AND CHANGE OF PLEA PROCEEDINGS***
***BEFORE THE HONORABLE LIAM O'GRADY,***
***UNITED STATES DISTRICT COURT JUDGE***

APPEARANCES:

For the United States:

**Matthew Burke, Assistant U.S. Attorney**
US Attorney's Office (Alexandria-NA)
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Email: Matthew.Burke@usdoj.gov

**Heidi B. Gesch, Assistant U.S. Attorney**
US Attorney's Office (Alexandria-NA)
2100 Jamieson Avenue
Alexandria, VA 22314
NA
703-299-3700
Email: Heidi.gesch@usdoj.gov

**Todd Gee, Assistant U.S. Attorney**
US Attorney's Office (Alexandria)
2100 Jamieson Avenue
Alexandria, VA 22314
NA
703-299-3700
Email: Todd.gee2@usdoj.gov

APPEARANCES: (Cont.)

For the Defendant: **Stuart Alexander Sears, Esq.**
Schertler & Onorato LLP
901 New York Avenue, NW
Suite 500 West
Washington, DC 20001
202-628-4199
Fax: 202-628-4177
Email: Ssears@schertlerlaw.com

Court Reporter: **Scott L. Wallace, RDR, RMR, CRR**
Official Court Reporter
United States District Court
401 Courthouse Square
Alexandria, VA 2231-5798
703.549.4626
scottwallace.edva@gmail.com

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

**MORNING SESSION, JUNE 11, 2020**

(10:32 a.m.)

THE COURTROOM CLERK: The Court calls case 1:20-CR-84, *United States of America versus Garrison Kenneth Courtney*, for an arraignment and plea hearing.

May I have the appearances, please, first for the government.

MR. BURKE: Good morning, Your Honor. Matthew Burke on behalf of the United States. Also with me today and appropriate for social distancing in the galley is Assistant United States Attorney Rob Hart and Deputy Chief of the Public Integrity Section for Main Justice, Todd Gee, and we've also got someone on teleconference, Assistant United States Attorney Heidi Gesch.

THE COURT: Good morning to each of you.

MR. SEARS: Good morning, Your Honor. Stuart Sears on behalf of Mr. Courtney who is present in the courtroom.

THE COURT: All right. Good morning, Mr. Sears. Good morning, Mr. Courtney.

THE DEFENDANT: Good morning, Your Honor.

THE COURT: Are we ready to proceed?

MR. SEARS: We are, Your Honor.

THE COURT: All right. Let's have Mr. Courtney sworn.

MR. SEARS: Your Honor, before we proceed, should Mr. Courtney remove his mask for the purposes of this?

THE COURT: I think that's best, if you would, sir.

All right. We're going to ask you to remain there. There's a microphone there for you, and if it makes more sense for you to sit, that's fine with me, go ahead and sit, and please take your mask off and speak into the microphone. How old are you, sir?

THE DEFENDANT: I'm 44, sir --

THE COURT: All right.

THE DEFENDANT: -- Your Honor.

THE COURT: How far did you go in school?

THE DEFENDANT: I have a master's degree.

THE COURT: All right. Are you taking any medication or having the effects of any illness which would make it difficult for you to understand the questions that I'm asking you here today?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. Has anybody made any threats or promises that aren't in this agreement to get to you plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you prepared to plead guilty to wire fraud because you are guilty of that charge?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Have you told Mr. Sears everything about this case so he can represent you to the best of his ability?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And have you gone over yourself and with Mr. Sears the plea agreement and the Statement of Facts and the criminal information and the waiver of indictment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And has Mr. Sears answered any questions you had about the information in each of those documents so that you're satisfied that you're prepared to move forward here today?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The Statement of Facts and the criminal information are very detailed and identify individuals and companies and public officials, and we'll go over those in some detail during your Statement of Facts, but are you familiar with the facts as represented in the criminal information, and do you understand who those parties were?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you need anymore time to speak to Mr. Sears now before we proceed with the hearing?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. Let's look first at the waiver of indictment. You understand that you have a right to require the government to put this case before a Grand Jury and formally charge you by indictment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that that process would require them meeting with a Grand Jury? The Grand Jury is made up of approximately 24 members of our community. They would hear evidence from a witness who is under oath, and only if a majority of the grand jurors found that there was probable cause to believe that you committed this offense would you be formally charged?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You can waive that proceeding, if you wish, and proceed by criminal information, which has now been filed in this case, and do you understand that as well?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you've agreed, after speaking with Mr. Sears, to waive the requirement of the Grand Jury proceeding and to proceed by criminal information; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. I find that you have knowingly and voluntarily waived your right to the Grand Jury proceeding.

Do you understand that the criminal information charges -- as I said, it's quite detailed, but it charges that beginning no later than 2012 and up through at least 2016, that you committed wire fraud, and the execution of that is detailed in paragraph 53 where it states that on or about October 7th of 2015, for the purpose of executing the scheme described in the manner and means, that you transmitted and caused to be transmitted by means

of wire and radio communication in interstate and foreign commerce any writings, signs, signals, and pictures, namely an e-mail, sent at the direction of you from Public Official E addressed to an executive of Company D with the subject line "FW pending award unclassified" from a computer in the Eastern District of Virginia to a computer outside of Virginia in violation of Title 18, Sections 1843 and 2. Do you understand that's the charge in the information?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you go over with Mr. Sears the elements of the offense that the government must prove in order for you to be convicted of a violation of Title 18, Section 1343?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And following that charge is a forfeiture notice on the last page of the criminal information, which states that you, if convicted on Count 1 of the information, shall forfeit to the United States any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as the result of that conviction, and if the property subject to forfeiture cannot be located, that the United States will seek an order forfeiting substitute property, including but not limited to a sum of money equal to at least $1,074,961 in accordance with Title 18, Section 981(a)(1)(C). Do you understand that as well?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Do you understand that you have a right to plead not guilty to the criminal information just as you could to the indictment and require the government to prove its case against you beyond a reasonable doubt?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you're entitled to a jury trial, if you wish it, where 12 members of our community would hear evidence, and only if they found you guilty unanimously would you be convicted of this charge?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if there was a trial, the government would be required to put witnesses on the stand; those witnesses would be under oath; they would be subject to cross-examination by Mr. Sears?

You would have a right to contest the evidence that the government sought to admit against you.

You would have a right to testify in a trial if you wished, and you would have an absolute right not to testify if you did not wish to, as you have a right to remain silent.

You have a right to use the power of the Court to compel witnesses to attend and testify on your behalf, and you have a right to counsel at every stage of the proceedings against you. Do you understand those rights?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And have you discussed with Mr. Sears your

right to plead not guilty and have a trial in this case, and you've decided to waive that right and plead guilty here instead?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Do you understand that a conviction on wire fraud carries with it a maximum penalty of up to 20 years of imprisonment, a fine of $250,000, not more than greater of twice the gross gain derived from any person from the offense or twice the gross loss of the person -- other than the defendant -- resulting from the offense, full restitution, forfeiture of assets, a special assessment of a hundred dollars, a supervised period of release of a maximum of three years? Do you understand all that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that supervised release is a period of probation which begins after you have served any term of incarceration, and if you're found to be in violation of the conditions of your supervised release during that three years or whatever period is imposed, you could be ordered back to the penitentiary for its full length? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. I'm going to go through the plea agreement now, sir, and if you look at paragraph 4, the role of the Court and the Probation Office, you and your counsel have met with the government and agreed to recommend to the Court certain provisions of the Sentencing Guidelines. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you go over the Sentencing Guidelines with Mr. Sears that apply in your case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So you and the government have agreed that the base offense level is a 7, that the offense level is increased by 18 levels because the loss is between 3.5 million and less than 9.5 million, and the offense level is increased by two levels because the offense involved ten or more victims, it increased by two levels because the offense involved misrepresentations that you were acting on behalf of a government agency, and then the government has agreed not to seek an enhancement under 2B1.1(b)(10) or 3C1.1. Do you understand those are recommendations to the Court, but they're not binding on the Court, and I can accept them or not accept them? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The way the process will work is the Probation Office will determine what it believes to be the proper Sentencing Guideline calculation. They will then communicate that to your counsel and to the government, and the government -- both parties will have a right to address what they believe are inaccuracies in the guideline calculation to me, and then ultimately, on your date of sentencing, I'll determine the appropriate Guideline range and consider that in the sentencing

factors. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Do you understand that in your agreement you have waived your right to appeal your conviction, as well as any sentence that I impose, as long as it's a lawful sentence?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. You understand that that doesn't include a right to direct an appeal for ineffective assistance of counsel?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It does include any rights you may have had to move to suppress evidence that was obtained during the course of the investigation against you. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. You have agreed to make restitution, which, of course, is mandatory in this instance, and for the full amount of the victims' losses. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And in paragraph 8, the victims are identified as Companies B through M with a total restitution amount of $4,481,871. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that in return for your plea to the wire fraud in the criminal information, the government has

agreed not to further criminally prosecute you in the Eastern District of Virginia for the specific conduct described in the criminal information or in the Statement of Facts? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And you understand that this agreement does not confer immunity from prosecution by any state government in the United States?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Burke, does it include immunity for any other federal jurisdiction that might be investigating similar conduct by Mr. Courtney?

MR. BURKE: No, Your Honor. The entirety of the agreement, as stated in this agreement, is that it does confer immunity from prosecution for the specific conduct laid out in the Statement of Facts, but there's no other immunity granted beyond what is stated on the face of this agreement.

THE COURT: All right. And is the government aware of any other jurisdictions, federal jurisdictions which are investigating similar conduct by Mr. Courtney at this time?

MR. BURKE: I am not, Your Honor.

THE COURT: Okay.

MR. BURKE: Let me clarify, Your Honor. This case was investigated and prosecuted jointly by the U.S. Attorney's Office for the Eastern District of Virginia and by the Public Integrity

Section of Main Justice. Beyond those two litigating components, I'm not aware of any other federal agencies investigating Mr. Courtney for these or related conduct.

THE COURT: Okay. Thank you. Do you understand the limits of the immunity that's provided in paragraph 9, Mr. Courtney?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In paragraph 10, you've agreed to forfeit, as we went over in the criminal information, all interests in any fraud-related asset or derived from that -- if the property is not available, a sum of money equal to at least $1,076,961. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that the government may determine that if the proceeds are not available, they can enter a forfeiture money judgment in the amount of those proceeds against you. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. You've also agreed to waive all constitutional and statutory challenges to the forfeiture agreement. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And in paragraph 12, you have agreed to identify all assets, which you have and have any interest over, or which you exercised or controlled, directly or

indirectly, within the past five years.

THE DEFENDANT: Yes.

THE COURT: Okay. Let's look at the Statement of Facts, then, as we've gone over some of it in the criminal information, but I'm going to go over it now in greater detail.

Is it correct that you were, between 2005 and 2009, employed as a public affairs officer with the DEA?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that you have never been an employee or otherwise affiliated with the CIA, with the exception that you applied for a job with the CIA in 2005; you were extended a conditional offer but did not respond, and that that offer lapsed in 2007; is that right?

THE DEFENDANT: Correct, Your Honor.

THE COURT: And is it correct that Individual A is an individual who also was never employed or affiliated with the CIA but, similarly to you, had been extended a conditional offer by the CIA which was not accepted and which lapsed around the same period in 2007?

THE DEFENDANT: Correct, Your Honor.

THE COURT: Is it correct that Individual B was a private citizen employed as a child anesthetist and also worked part time in producing videos, and Individual B was never an employee or affiliated with the CIA?

THE DEFENDANT: Correct, Your Honor.

THE COURT: And is it correct that Individual C was employed performing various acquisition support roles for private companies on behalf of federal agencies and, again, Individual C had never been an employee or affiliated with the CIA?

THE DEFENDANT: Correct, Your Honor.

THE COURT: All right. Do you agree with the descriptions of Public Officials A through Public Officials G as described in page 3 of your Statement of Facts?

THE DEFENDANT: Correct, Your Honor.

THE COURT: All right. And do you agree as well with the description of the companies, A through M, that are described in paragraphs 13 through 25 in your Statement of Facts?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If we go to Count 1 on page 5 of the Statement of Facts, again it states that, beginning no later than in or about 2012 and continuing to at least 2016, that you devised or intended to devise a scheme to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations and promises by the concealment of material facts, and that the purpose and object of the scheme was to obtain money and property through those materially false and fraudulent pretenses, promises and concealment of material facts.

And then it goes into the manner and means of the scheme. And is it correct that you knowingly and falsely claimed that you and Individual A were covert employees, agents, or operatives, or

otherwise affiliated with the CIA, and that at times you made that claim explicit and that at other times you implied it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And, of course, you knew that you and Individual A were never employed or affiliated with the CIA; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is it correct that you also knowingly and falsely claimed that you were leading or assigned to or involved in a highly classified program operated by various government agencies within the United States defense and intelligence communities that you sometimes referred to as a Task Force?

THE DEFENDANT: Yes, Your Honor.

THE COURT: That you claimed that this program had been established personally by high level officials of the United States government, including the President of the United States, the Attorney General, the Director of National Intelligence, and other government agencies; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that you also falsely claimed that the classified program was to support special operation forces that the United States was operating covertly in Africa?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Or, alternatively, that it was to enhance intelligence gathering capabilities of the United States?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And is it correct that you further stated that the classified program or Task Force would operate in concert with private companies who would provide goods or services to various defense or intelligence agencies of the United States government knowing that the course or program did not exist?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is it correct that you invented various code names to refer to the classified program, including Alpha 214 and A-214, which were all false names?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it correct that you approached numerous private companies that did or were seeking to do business for the defense or intelligence agencies, including Companies B through L, as previously identified?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that you falsely claimed or deliberately implied that you and Individual A were employed or affiliated with the CIA, and that you were involved in some variation of the classified program that you discussed in paragraph 30?

THE DEFENDANT: Yes, Your Honor.

THE COURT: That you explained to the private company that they needed to hire you and Individual A and place you on their payroll as independent contractors?

THE DEFENDANT: Yes, Your Honor.

THE COURT: That you did this by falsely representing that the private company needed to pay you and Individual A to create an initial cover to make it appear that you were a private citizen with no ties to the United States government, and that companies would be reimbursed by the CIA for payments made to you and Individual A, and that the reimbursements would, perhaps, come from the award of lucrative contracts from the government to that private company?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Is it correct that you sought to conceal and prevent the discovery of this fraud by claiming falsely that your identity and portions of your conduct and information associated with a Task Force were highly classified?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is it correct that you caused these companies or victims and other potential witnesses to sign nondisclosure agreements purporting to forbid those individuals from speaking or revealing the information that you claimed was classified?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it correct that you often held meetings with these private entities and victims and other individuals inside of a sensitive compartmented information facility, a SCIF?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you did that under the false pretext of maintaining the security of the supposed classified program?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is it correct that when you were meeting with these victims or other individuals, at times they were searched and prohibited from possessing electronic devices during your meetings?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Did you also falsely advise victims that they might be under surveillance by foreign intelligence services?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you also direct and encourage victims to communicate with you via encrypted communication devices and applications?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And did you also knowingly make false claims to some of those victims about your prior military service, which was false, in order to bolster your illusion that you were a covert intelligence officer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you also create fake and fraudulent documents purporting to grant victims or others immunity from prosecution for their participation in the supposed classified program?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you also create fake and fraudulent documents purporting to be contracts and basic order agreements and task orders issued by the various agencies of the United States government alleging that these entities had been awarded these contracts by the government, had been awarded to the companies, these contracts, when, in fact, that was not true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And that these contracts were fraudulent, but they were identified that they had been issued by the United States Army's Program Executive Office, Enterprise Information Systems, Department of Commerce, the CIA, the NIH, the Office of the Secretary of Defense for Intelligence, and other components of the Department of Defense; is that right?

And is it correct that many of these contracts actually existed, and all the documents had been created by you to perpetuate the illusion of the classified program?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Is it correct that you also knowingly used certain real public officials, as identified previously as Public Officials A through G, and that you would invite these real public officials, some of whom you knew from the private service with the DEA, to attend meetings with executives from the various private companies with you; is that right?

THE DEFENDANT: Yes, sir.

THE COURT: And they would participate in those meetings by giving generic briefings regarding the government's need for those private companies?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And is it correct that you sought to corruptly influence Public Official D in the performance of his or her official duties by providing Public Official D directly and indirectly with things of value, including that you arranged for Company G and Company L, two companies that you were defrauding or attempting to defraud, to hire Public Official D's adult child, notwithstanding the adult lacked the relevant training or experience in the job?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And that you convinced the companies to hire Public Official D's adult child in part by falsely representing that doing so was part of the classified program, and that companies would be reimbursed for the salaries paid to that adult child?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is it correct that you knowingly and falsely convinced both private citizens and public officials that they had been hired by or otherwise selected to participate in these supposed classified programs?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it correct that after you had convinced certain private citizens that they had been selected to participate in the classified program, that you directed them to assume false identities and claimed that doing so was in furtherance of the program?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Is it correct that you directed Individual B to pose falsely as an official with the Department of Defense during meetings with executives from Company B and posed falsely as a contracting officer with the DEA during a meeting with executives from Company A?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is it correct that you also had Individual C pose or was prepared to pose falsely as a contracting officer with the CIA during an anticipated meeting with these executives from Company A?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it correct that you also convinced real public officials in the United States government that they had been selected to participate in this supposed classified program, and that you provided those public officials with talking points or other scripts regarding the supposed operation to be used when those public officials met with executives at the victim companies?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it correct that you used those public officials to confirm the existence and validity of the fake contracts and basic ordering agreements or task orders that were allegedly issued by the United States that you had fabricated in order to confirm that payments soon would be forthcoming with those fake documents?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Is it correct that you convinced certain public officials to grant you access to government offices, and thereafter you used your presence inside of those governmental offices to falsely burnish your legitimacy in the eyes of the corporate executives and other corporate officials?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it correct that you also knowingly and falsely accused victim companies and their executives of having mishandled or intentionally leaked alleged information, and thereafter threatened to revoke or cancel their government contracts or to have those persons arrested who had leaked or mishandled information when you, in fact, were using that -- those threats as a way to deflect suspicion away from your fraud?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it correct that as a part of this scheme you also fraudulently gained a position working for NITAAC, and that you used that working position to try and convince various private companies to pay you as an employee, an independent

contractor, under the false pretense that you were a covert intelligence operative in need of a cover employment, and that companies you had defrauded included Company J and Company L?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Was it correct that after you had been placed on Company L's payroll, you approached government officials at NITAAC and also claimed that you were a covert employee of the CIA working on that highly classified program and falsely represented that the CIA and other defense and intelligence community officials wanted NITAAC to serve as the contracting arm of the supposed classified program, and that it would allow NITAAC to assist the program in awarding billions of dollars worth of classified contracts to private companies?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Is it correct that you further advised and caused NITAAC officials to be advised that they needed to award a contract to Company L where Company L would supply personnel with expertise in government acquisitions and procurements to NITAAC; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that you also fraudulently convinced NITAAC officials for this acquisition support contract that should be awarded to Company L, that it should be done on a sole-source basis without any competition, and that this was justified by national security concerns?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You knew that that was not correct at the time you made those statements?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And is it correct that once NITAAC had been awarded this acquisition support contract to Company L, that you used the contract as a basis to install yourself at NITAAC where you then gained access to sensitive nonpublic information about the procurement of other federal agencies being supported by NITAAC?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Is it correct that you then used that sensitive nonpublic information to manipulate and attempt to manipulate the federal procurements by steering and attempting to steer the award of contracts administered by NITAAC to other companies where you were then on the payroll, including Company J?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it correct that at some stage during this scheme, Company A was pressing you for payment for the work that it had performed and the costs it had incurred on the supposed classified program?

THE DEFENDANT: Yes, Your Honor.

THE COURT: That you thereafter approached Company M, an investment financing company, and falsely claimed that the U.S.

government was about to seize Company A and all of its assets due to an alleged illegal violation by the Company's president, and that the United States government was owed approximately 1.95 million to Company A for work that the company had performed in this supposed classified program, and that the final seizure of Company A would not take place until the outstanding bill for the 1.95 million had been repaid to Company A, and that if Company M repaid the outstanding bill to Company A, the United States government would seize Company A and thereafter repay Company M approximately $2.5 million; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that Company A agreed then to disburse approximately 1.95 million to an account at -- that you controlled?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that you then caused Company M to transfer the money into an escrow account maintained by an attorney with offices in Virginia?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that you then directed that attorney to forward those funds on to Company A and thereby refunding Company A for part of the expenses it had incurred in working on this supposed classified program, and you represented that the funds had come from the United States government and thereby gained further legitimization of the classified program in the minds of

the executives of Company A?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Is it correct that on or about October 7th of 2015, for the purpose of executing this scheme, in the Eastern District of Virginia and elsewhere, that you again transmitted by means of wire and radio communication and interstate and foreign commerce an e-mail sent at your direction from Public Official E addressed to executives of Company D with the subject line: "FW paying award unclassified" from a computer in the Eastern District of Virginia to a computer outside of Virginia; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Do you agree that, as a result of the commission of this fraudulent scheme, that the companies identified as Company B through M were caused, proximately and directly, losses totaling $4,481,871?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And you agree that the government could prove each of the facts in the Statement of Facts that we've gone over beyond a reasonable doubt with admissible evidence if the case had gone to trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: How do you plead, then, Mr. Courtney, to the wire fraud charges in the criminal information as we have just gone over in violation of Title 18, Section 1343 and 2, guilty or

not guilty, sir?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: I'm sorry?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: Mr. Sears, have you gone over the facts of the case with Mr. Courtney?

MR. SEARS: I have, Your Honor.

THE COURT: And have you gotten discovery from the government in the case?

THE DEFENDANT: We have received a substantial amount of pre-indictment discovery, yes, Your Honor, I have.

THE COURT: All right. And do you believe that Mr. Courtney's plea today is knowingly and voluntarily made?

MR. SEARS: I do, Your Honor.

THE COURT: And that there's a basis in fact for it?

MR. SEARS: I do, Your Honor.

THE COURT: All right. Thank you, Mr. Sears.

All right. Based on the answers to my questions by Mr. Courtney and also Mr. Sears, I'll find him guilty of the criminal information. I'll order a presence report and continue this for sentencing.

I think we ought to go into the end of October. Is that a problem?

MR. BURKE: That's fine for the government.

THE COURT: Okay.

MR. SEARS: No objection, Your Honor.

THE COURT: Okay. Let's go to October 23rd at 9 a.m., and we'll readjust it to another day during the week if we have to for the -- all the judges are trying to assign themselves different days of the week so we limit the traffic into the courthouse, so I may move it to a Tuesday, but let's keep it on Friday morning at this stage.

This is Mr. Courtney's first appearance in court; is that correct?

MR. BURKE: That's correct, Your Honor.

THE COURT: All right. And Mr. Courtney, Mr. Sears apprised you of the charges against you and the possible penalties when you were working with him; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. The Pretrial Services issued a report, and, after some evaluations, recommended certain conditions for Mr. Courtney's continued release.

Mr. Burke, do you have any comments you want to make about those conditions?

MR. BURKE: Yes, Your Honor. The government is not seeking detention, and I believe we have a joint proposed recommendation that I have discussed with Mr. Sears, which I believe is agreeable to Mr. Sears and the defendant. We have several recommendations, in addition to what Pretrial Services recommended.

Number one, we had requested or we do request that Your Honor impose electronic monitoring with travel restricted to Hillsborough County and Pasco County, Florida. Hillsborough County encompasses Tampa and the defendant's residence, and Pasco County, Florida is immediately north of the residence, and I believe is the county in which the defendant's children reside. He shares custody, I believe, of those children with his ex-wife, and I believe that's agreeable to the defense.

We also ask that Your Honor impose the following additional conditions: The defendant surrender any passport and not obtain any passport or international travel document. We did seize the defendant's passport during the execution of the search warrant, but we think it would be prudent as a backstop to have that condition in place; that the defendant have no contact with victims or witnesses -- we can supply a list of those to Mr. Sears and to the Probation Office -- that the defendant not possesses a firearm or other weapon; that he not use or possess narcotics or controlled substances; that he report any contact with law enforcement; and that he promptly notify the Pretrial Services officer and the government of any change in employment, and those would be in addition to the conditions recommended in the Pretrial Services report.

THE COURT: All right, Mr. Sears, do you have any objection to adding any of those?

MR. SEARS: I do not, Your Honor. We negotiated those

conditions with the government. I would just note, so the Court's aware and as the Court probably saw in the paperwork, this agreement was signed what seems like years ago back in March, and Mr. Courtney had agreed at that time to enter into some conditions voluntarily with the government because the government had some concerns. Knowing that we weren't going to be able to get in front of a judge, we didn't oppose conditions of release.

I just want the Court to be aware that he has performed as asked by the government at all times, and there has been no issues at all, and for those reasons we ask the Court to release him under those conditions.

THE COURT: All right. Thank you. I agree that you should be released on conditions of release. We'll place him on a $25,000 personal recognizance bond which will not require any money or surety be paid at this time. Only if there's a nonappearance would that come into play.

I'll order that you be supervised by Pretrial Services; that your employment be approved by Pretrial Services or the Court; that you notify Pretrial Services of current or future -- that you notify any current or future employers of the charged offense; that you provide Pretrial Services access to financial records as requested; that you not open any new lines of credit without their permission; that you -- your supervision will include electronic monitoring; that you will have a limitation of

travel within Florida and specifically Hillsborough or -- how do you spell the other county?

MR. BURKE: I believe it's P-A-S-C-O.

THE COURT: P-A-S-C-O County, Florida as needed travel to see your counsel. Just let the Pretrial Services officer know that you want to; that your passport has been seized, but that you not obtain another passport or any other travel documents; that you have no contact with the victims or potential witnesses in the case, and that those names will be identified by the government to Mr. Sears and yourself; that you not possess any firearms or other weapons; that you -- I'm not going to require drug testing, given the information I've received, but certainly that you not use unlawful substances and that, if it turns out that the Pretrial Services believes you should be drug tested, that that condition can be added; that you report any interaction with law enforcement to the Pretrial Services officer; and that you identify any changes in your employment.

All right. Anything else in this matter today, then?

MR. BURKE: Your Honor, I believe the defendant needs to check in with Probation and the marshals, but beyond that, I don't believe there's anything further.

THE COURT: All right. I signed the pretrial release requirements. Take a minute and go over those conditions and sign those conditions before you leave here, and then Mr. Sears will take you down to the Probation Office, all right?

So, this is an important time for you. Be very mindful of what Pretrial Services requirements are, and the Probation Department will be getting in touch with you shortly to begin the presentence report. It's an important document for me. It tells me much more than I know about you today, so if you have questions about what they're asking you to do, you make sure you get in touch with Mr. Sears right away. All right, sir?

THE DEFENDANT: Thank you, Your Honor.

THE COURT: All right. Thank you, all. All right, we're in recess.

(Proceedings adjourned at 11:24 a.m.)

**C E R T I F I C A T E**

I, Scott L. Wallace, RDR-CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Scott L. Wallace 7/24/20

**Scott L. Wallace, RDR, CRR** **Date**
**Official Court Reporter**